No. 20-11046

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————

UNITED STATES OF AMERICA,
*Plaintiff - Appellee,*

v.

DONALD RAY JOHNSON,
*Defendant - Appellant*

———————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS,
LUBBOCK DIVISION

———————

**APPELLANT'S REPLY BRIEF**

———————

JASON D. HAWKINS
*Federal Public Defender*
Northern District of Texas

TAYLOR WILLS EDWARDS "T.W." BROWN
*Assistant Federal Public Defender*
Northern District of Texas
P.O. Box 17743
819 Taylor Street, Room 9A10
Fort Worth, TX 76102
(817) 978-2753
Taylor_W_Brown@fd.org
Texas Bar No. 24087225

Attorneys for Appellant

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. iii

ARGUMENT IN REPLY ................................................................................................... 1

    I.    The district court did not comply with the mandate ...................................... 1

        a.  The district court resorted to bare assertions on remand, and despite the government's insistence, the paltry record compiled below cannot fill in the gaps ...................................................................................................... 2

        b.  The government overlooks an important point—conclusions based on legally insufficient fact-findings are just as bad as those based on no facts at all ........................................................................................................ 4

    II.   Even if the district court's one-page order complied with the mandate, its findings nevertheless constitute clear error ...................................................... 9

        a.  This Court should reject the government's invitation to affirm on an alternative factual basis—after all, the district court abandoned a direct-responsibility theory on remand ................................................................... 9

        b.  The government conflates undisputed facts about the presence of drug money with Mr. Johnson's responsibility for those proceeds ................ 11

CONCLUSION ................................................................................................................. 15

CERTIFICATE OF FILING AND SERVICE ........................................................................ 16

CERTIFICATE OF COMPLIANCE .................................................................................... 17

# TABLE OF AUTHORITIES

## FEDERAL CASES

*E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475 (5th Cir. 2014) .................................................. 10

*Mangaroo v. Nelson*, 864 F.2d 1202 (5th Cir. 1989) ............................................................ 9

*League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*,
    675 F.3d 433 (5th Cir. 2012) ...................................................................... 8

*Sojourner T v. Edwards*, 974 F.2d 27 (5th Cir. 1992) ..................................................... 9, 11

*United States v. Barry*, 978 F.3d 214 (5th Cir. 2020) ....................................................11-12

*United States v. Bernegger*, 661 F.3d 232 (5th Cir. 2011) ................................................2, 4

*United States v. Carales-Villalta*, 617 F.3d 342 (5th Cir. 2010) ........................................ 8

*Unnited States v. Devine*, 934 F.2d 1325 (5th Cir. 1991) .................................................. 15

*United States v. Ford*, 558 F.3d 371 (5th Cir. 2009) ............................................................ 4

*United States v. Hammond*, 275 F.3d 43,
    2001 WL 1223723 (5th Cir. Oct. 1, 2001) ................................................ 1

*United States v. Hearns*, 845 F.3d 641 (5th Cir. 2017) ...................................................2, 7

*United States v. Johnson*, 812 F. App'x 252 (5th Cir. 2020) ............................................... 1

*United States v. Meza*, 740 F.3d 411 (5th Cir. 2012) ........................................................ 10

*United States v. Narviz-Guerra*, 148 F.3d 530 (5th Cir. 1998) ........................................... 2

*United States v. Sealy*, 661 F. App'x 278 (5th Cir. 2016) .............................................10-11

*United States v. Smith*, 14 F.3d 860 (5th Cir. 1994)..............................................................13

*United States v. Thomas*, 963 F.2d 63 (5th Cir. 1992).........................................................14

*United States v. Valdez*, 453 F.3d 252 (5th Cir. 2006) .....................................................6, 14

*United States v. Williams*, 731 F. App'x 268 (5th Cir. 2018) ............................................10

*United States v. Wilson*, 116 F.3d 1066 (5th Cir. 1997)...................................................6, 14

*United States v. Zapata-Lara*, 615 F.3d 388 (5th Cir. 2010) .......................................4-5, 7

Federal Rules

Fed. R. Crim. P. 32 ...................................................................................................................7

United States Sentencing Guidelines Manual

USSG § 1B1.3..................................................................................................3, 6-7, 13-14

USSG § 2D1.1 ...........................................................................................................................5

**ARGUMENT IN REPLY**

## I.     The district court did not comply with the mandate.

The government's mandate-rule argument relies on a pair of mistakes.  This Court reversed Mr. Johnson's original sentence for insufficient factual findings, *see United States v. Johnson*, 812 F. App'x 252, 253 (5th Cir. 2020), and on remand, the district court entered a one-page order, which refashioned the relevant-conduct criteria as a series of legal conclusions, (ROA.93).  According to the government, the district court thereby provided the "'key words'" necessary to resolve this appeal.  *See* Appellee's Brief at 12, *United States v. Donald Johnson*, No. 20-11046 (5th Cir. Feb. 18, 2021) (quoting *United States v. Hammond*, 275 F.3d 43, 2001 WL 1223723, at *1 (5th Cir. Oct. 1, 2001)).  From there, it directs this Court to other portions of the record to fill in the gaps left by the district court's cursory order.  Both arguments dramatically overstate the usefulness of the previously compiled record.  The government also misses the point on legal sufficiency—a conclusion based on one or more insufficient facts is just as bad as a conclusion based on no facts at all.

1

**a. The district court resorted to bare assertions on remand, and despite the government's insistence, the paltry record compiled below cannot fill in the gaps.**

The district court entered a conclusory order on remand. The order cites no previously compiled evidence, *see* (ROA.93), and the district court declined Mr. Johnson's invitation to develop the record any further, *see* (ROA.83-87, 94). Its so-called "findings" were therefore no more than "bare assertions." *See United States v. Hearns*, 845 F.3d 641, 651 (5th Cir. 2017) (quoting *United States v. Bernegger*, 661 F.3d 232, 242 (5th Cir. 2011)). Without more information, "there is no way for this Court to know whether" evidence with a "sufficient indicia of reliability" supports its relevant-conduct conclusion. *See United States v. Narviz-Guerra*, 148 F.3d 530, 537 (5th Cir. 1998).

On this point, the government flubs the facts. The district court's one-page order, it argues, simply elaborated upon evidence compiled at the original sentencing hearing. Appellee's Brief, *supra*, at 11. That evidence, however, sheds no light on the questions at the heart of this appeal or the Court's earlier mandate. To be sure, the presentence report established Mr. Johnson's presence at a trap house on a single occasion, and on the night in question, the police found Mr. Johnson distributing crack cocaine. (ROA.151-52). Those facts no doubt establish his guilt for the

underlying offense, *see* (ROA.46-49), but by themselves, provide no basis upon which to infer a global agreement to pool resources with any and all dealers using the house at some point in the past to deal any and all drugs. Remember—the preceding investigation centered on the residence, not Mr. Johnson, and the police did not identify him as a suspect until the night of his arrest. *See* (ROA.178-79, 216). Moreover, the investigation turned up evidence of methamphetamine, marijuana, and powder cocaine sales in the preceding months, *see* (ROA.178-79), but police found Mr. Johnson working alone and distributing only crack cocaine, *see* (ROA.151-52). What about the government's witness at sentencing? He testified that the residence was a "trap house" and explained why the money recovered was "consistent with narcotics trafficking." (ROA.128-30). His testimony establishes some context for Mr. Johnson's actions, but from there, the district court could not reasonably infer the facts necessary to support the conclusion in its order. Nothing in the record, for example, would allow the district court to circumscribe "the scope of the criminal activity" Mr. Johnson "agreed to jointly undertake." USSG § 1B1.3 cmt. 3(B).

At one point, the government even mistakes evidence of the district court's carelessness for proof of close attention. It argues on appeal that the district court "clearly revisited the record," and for support, notes its "discussion of the

appropriate price for cocaine base." Appellee's Brief, *supra*, at 10. In fact, the district court initially misstated the price. *See* (ROA.82). The parties caught the error, and in separate motions, asked the district court to issue a second order correcting its mistake. (ROA.85-86, 89-92). The district court obliged, (ROA.93), but the initial blunder inspires little confidence in its handiwork below.

### b. The government overlooks an important point—conclusions based on legally insufficient fact-findings are just as bad as those based on no facts at all.

Errors come in all shapes and sizes. A district court necessarily errs whenever it adopts a sentencing conclusion based on zero underlying facts. *See United States v. Bernegger*, 661 F.3d 232, 242 (5th Cir. 2011) (citing *United States v. Ford*, 558 F.3d 371, 376 (5th Cir. 2009)). A district court also errs if it adopts a conclusion based on one or more insufficient facts. *See United States v. Zapata-Lara*, 615 F.3d 388, 390-91 (5th Cir. 2010). The second type of error is less obvious but is error all the same.

*United States v. Zapata-Lara* provides a useful illustration. There, the district court reached a legal conclusion based on a single fact. Mr. Zapata pleaded guilty to a drug-trafficking conspiracy after arranging a drug deal. *Id.* at 389. The deal was set to take place at a house owned by one of his co-conspirator's mothers. *Id.* After the participants arrived, the police intervened, made arrests, and then discovered "a

loaded handgun about fifteen feet away from the . . . transaction inside a small

refrigerator in the garage." *Id.* "The PSR recommended . . . a two-level sentence

enhancement for possession of a dangerous weapon," and the district court adopted

that conclusion at sentencing. *Id.* (citing U.S. SENTENCING COMM'N, GUIDELINES

MANUAL § 2D1.1(b)(1) (Nov. 1, 2018)). This Court reversed on appeal and for good

reason—on the facts before it, the district court could not even apply the relevant

legal standards. In order to hold Mr. Zapata directly responsible for the firearm, the

district court needed to find facts "establishing a temporal and spatial relationship"

between it, the crime, and Mr. Zapata. *Id.* at 391. In turn, the district court could

hold Mr. Zapata indirectly responsible only if one of his co-conspirators knowingly

possessed the gun. *Id.* at 390-91. Based on its mere presence, the district court could

not reasonably infer any of the additional facts necessary to support either legal

conclusion, and this Court reversed for "appropriate findings." *Id.* at 391.

The district court committed the same error here. The presentence report

established Mr. Johnson's presence at a trap house on a single occasion. (ROA.151-

52). Sure enough, the police found Mr. Johnson distributing crack cocaine,

(ROA.46-48), but from that fact, the district court could not reasonably conclude Mr.

Johnson's indirect responsibility for any and all drug sales taking place at the

residence.  For one, the district court should have "first determine[d] the scope of the criminal activity" Mr. Johnson "agreed to jointly undertake," and in doing so, could "consider any explicit agreement or implicit agreement fairly inferred from the conduct of the defendant and others."  USSG § 1B1.3 cmt. 3(B).  Mr. Johnson's presence on a single occasion, however, sheds no light on the identity of his co-conspirators—if any—or the scope of their agreement to break the law.  The district court should also have determined that the sales represented by the disputed proceeds were "reasonably foreseeable in connection with" Mr. Johnson's "jointly undertaken criminal activity" but clearly could not on the evidence developed below. *See* USSG § 1B1.3(a)(1)(B)(iii).  After all, "the reasonable foreseeability of all drug sales does not automatically follow from membership in a conspiracy," *United States v. Valdez*, 453 F.3d 252, 265-66 (5th Cir. 2006) (quoting *United States v. Wilson*, 116 F.3d 1066, 1077 (5th Cir. 1997)), but here, the district court divined the same conclusion on even less evidence.  Mr. Johnson pleaded guilty to a substantive offense, not a conspiracy, and on the night the police found him in the trap house, was acting alone.  (ROA.151-52).  The preceding investigation turned up evidence of methamphetamine, marijuana, and powder cocaine sales at the residence, but the police did not identify Mr. Johnson as a suspect until the night of his arrest and even

then only recovered crack cocaine. *See* (ROA.178-79, 216). The record raises more questions than it answers, and the district court's one-page order on remand provides no additional clarity. *See* (ROA.93).

These facts lead to an inevitable conclusion—the district court violated the mandate. This Court instructed it "to determine the amount of currency for which Johnson was directly or indirectly responsible . . . and to provide the factual findings *required to support its decision*." (ROA.81) (citing FED. R. CRIM. P. 32(i)(3)(B); USSG § 1B1.3(a)(1)(A)-(B) & cmt. n.3; *Zapata-Lara*, 615 F.3d at 391). The district court specified Mr. Johnson's indirect responsibility for the entirety of the cash recovered, but for support, simply refashioned the relevant-conduct criteria as a series of factual findings. (ROA.93). By themselves, those "findings" are meaningless, and the paltry record compiled at the initial sentencing hearing lends insufficient evidentiary support to make sense of its claims. *See Zapata-Lara*, 615 F.3d at 390-91. The district court thus erred.

The government attempts to avoid this conclusion by quibbling with the "conclusory" label. If a district court adopts a conclusion based on no facts, the government concedes, it must develop additional facts on remand. *See* Appellee's Brief, *supra*, at 11-12 (citing *Hearns*, 845 F.3d at 650-51). Mr. Johnson's case, the

government argues, is different, as the district court's one-page order built upon on a "sufficiently reliable" and "developed record." *Id.* at 11. For support, it cites an undisputed but ultimately unhelpful fact: "The uncontested testimony of a seasoned DEA agent provided an unequivocal and reasoned basis for concluding why each set of disputed currency was proceeds from narcotics distribution." *Id.* This is true but cannot bear the weight placed upon it by the government. Like the nearby firearm's presence in *Zapata-Lara*, the drug proceeds found elsewhere in the trap house provide evidence of additional dealing by someone, but on that fact alone, the district court could not infer Mr. Johnson's responsibility for that other individual's actions. Its presence, for example, sheds no light on the seller's identity or relationship to Mr. Johnson. The government overlooks these problems, and in doing so, presents the Court with a red herring. Whether based on zero facts or one or more legally insufficient findings, the district court erred and accordingly violated this Court's mandate. *See League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*, 675 F.3d 433, 438 (5th Cir. 2012) (citing *United States v. Carales-Villalta*, 617 F.3d 342, 344 (5th Cir. 2010)).

## II. Even if the district court's one-page order complied with the mandate, its findings nevertheless constitute clear error.

### a. This Court should reject the government's invitation to affirm on an alternative factual basis—after all, the district court abandoned a direct-responsibility theory on remand.

The government spends a portion of its brief defending a finding the district court never actually made. The PSR reports that Mr. Johnson "claimed ownership of any property located inside the residence." (ROA.152). From that fact, the government concludes that "the PSR correctly attributed the currency found in the house to" Mr. Johnson. Appellee's Brief, *supra*, at 14. It then spends a few pages defending this position, *see* Appellee's Brief, *supra*, at 14-16, but on remand, the district court went another way entirely. It held Mr. Johnson "indirectly responsible" for the money recovered and found that unidentified third parties conducted the drug sales in question. *See* (ROA.93). The government nevertheless asks this Court to affirm on a direct-responsibility theory. *See* Appellee's Brief, *supra*, at 14-16. In other words, it argues that Mr. Johnson constructively possessed the disputed currency. *See id.*

This Court should ignore that claim. To be sure, it may "affirm . . . on any grounds supported by the record," *Sojourner T v. Edwards*, 974 F.2d 27, 30 (5th Cir. 1992) (citing *Mangaroo v. Nelson*, 864 F.2d 1202, 1204 n.2 (5th Cir. 1989)), but that

9

power is "ultimately discretionary," *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 485 n.16 (5th Cir. 2014). This Court has opted against exercising discretion to affirm on new grounds when the "nature of the [alternative] inquiries" suggested on appeal are "fact intensive," *see id.*, and in this case, they undoubtedly are. The police, for example, found another individual in the home with Mr. Johnson. (ROA.151). In joint-occupancy cases, this Court "requires some evidence beyond presence in the location to create 'a plausible inference that the defendant had knowledge of and access to the illegal item.'" *United States v. Williams*, 731 F. App'x 268, 270 (5th Cir. 2018) (quoting *United States v. Meza*, 740 F.3d 411, 419 (5th Cir. 2012)). The district court made no relevant findings on remand, and in fact, chose not to pursue the theory the government advances on appeal. *See* (ROA.82, 93).

It gets worse from there. The police recovered some of the disputed currency behind drywall and the rest underneath a mattress in a room with no apparent connection to Mr. Johnson. *See* (ROA.48, 220). They did not recover the disputed cash in plain view, and in light of that fact, it is not clear whether Mr. Johnson's vague statement, divorced as it was from any particular item, would suffice to support the government's constructive-possession theory, even if the district court had adopted it below. *See Williams*, 731 F. App'x at 272 (citing *United States v. Sealy*,

661 F. App'x 278, 282 (5th Cir. 2016)). Again, the district court entered no relevant findings and never attempted to flesh out the various evidentiary holes in the government's alternative theory. *See* (ROA.82, 93). In similar circumstances, this Court has refused to affirm on an alterative basis. *Sojourner T*, 974 F.2d at 30 ("There was no trial or hearing to develop the record with respect to the several crucial factual and legal issues that underlie the preemption arguments, including whether certain contraceptives act after conception, and if so, whether the Statute criminalizes the use of these contraceptives."). It should do the same here.

### b. The government conflates undisputed facts about the presence of drug money with Mr. Johnson's responsibility for those proceeds.

The government begins its defense of the district court's actual findings on remand with reference to distinguishable authority. *See* Appellee's Brief, *supra*, at 15 (citing *United States v. Barry*, 978 F.3d 214 (5th Cir. 2020)). At the outset, this Court's opinion in *United States v. Barry* addressed a legally distinct claim. Mr. Barry took part in a drug-trafficking conspiracy, and during a search at his home, the police found "$14,658 in cash." *See Barry*, 978 F.3d at 216. The district court then held him directly responsible for the entirety of the cash and converted that sum into an equivalent amount of methamphetamine. *Id.* Mr. Barry argued on appeal that "insufficient evidence connect[ed] the money to drug sales," but unlike Mr. Johnson,

11

did not dispute the extent of his responsibility for drug sales made by other individuals. *See id.* at 218-19.

*Barry* is likewise distinguishable on the facts. Before the search, law enforcement received information that Mr. Barry "was involved in a drug-trafficking operation," and afterward, he took part in three deals with undercover agents. *Id.* at 216. From these facts, this Court could infer that Mr. Barry's conspiracy "was already active" when the police recovered the money, *id.* at 218, but the opposite is true here. Keep in mind—the police did not identify Mr. Johnson as a suspect until the night of his arrest, and on that occasion, found him acting alone. *See* (ROA.178-79, 216). Mr. Barry's subsequent buyers also paid him $2,100, which helped explain "how Barry . . . could have accrued such a large sum of cash." *Barry*, 978 F.3d at 218-19. The same inference helps explain how Mr. Johnson came to possess the cash on his person and the wad recovered from the kitchen table but does nothing to establish Mr. Johnson's responsibility for the third-party drug sales represented by the disputed currency. *See* (ROA.93).

The strained inferences at the heart of the government's remaining arguments reveal the evidentiary dearth underlying the district court's one-page order. Because "officers believed multiple individuals were distributing narcotics from the

residence," the government asserts, the district court could reasonably infer that Mr. Johnson "was acting within the scope of a jointly undertaken criminal activity." Appellee's Brief, *supra*, at 16. On this point, the government overstates its case. Mr. Johnson's presence at a location used by others to deal drugs on a single occasion is an insufficient fact from which to infer a global agreement to deal with others who used the location in the past. *See United States v. Smith*, 14 F.3d 860, 868 (5th Cir. 1994) ("From the record we can tell nothing more than that Phillips conspired with Smith for a limited purpose, to assist in finding a customer for her on one occasion in exchange for some crack cocaine for his own use."). The government's analysis also lacks a limiting principle. Each defendant's responsibility for another defendant's actions would depend on geography, rather than "the scope of his or her agreement to jointly undertake the particular criminal activity," and so long as one defendant operated in the same place as another, the district court could infer a global agreement between the two. *See* USSG § 1B1.3 cmt. n.3(B). The Sentencing Commission has rejected this approach in commentary:

> Defendant P is a street-level drug dealer who knows of other street-level drug dealers in the same geographic area who sell the same type of drug as he sells. Defendant P and the other dealers share a common source of supply, but otherwise operate independently. Defendant P is not accountable for the quantities of drugs sold by the other

> street-level drug dealers because he is not engaged in a
> jointly undertaken criminal activity with them.

USSG § 1B1.3 cmt. n.4(C)(vi).  This Court should do the same.

The government's foreseeability inference also fails.  "[T]he reasonable foreseeability of all drug sales does not automatically follow from membership in a conspiracy," *Valdez*, 453 F.3d at 265-66 (quoting *Wilson*, 116 F.3d at 1077), but here, the government effectively asks this Court to credit the same inference in the case of a jointly undertaken criminal activity, *see* Appellee's Brief, *supra*, at 17-18.  For support, it cites *United States v. Thomas*, but that opinion is distinguishable on the facts.  There, the defendant pleaded guilty to taking part in a "45-kilogram marihuana transaction," but evidence before the district court at sentencing established quite a bit more.  For example, a drug ledger recovered by the police proved that Mr. Thomas "was assigned a code number" by others involved in the underlying conspiracy and "had bought substantial quantities of cocaine over a period of time." *United States v. Thomas*, 963 F.2d 63, 65 (5th Cir. 1992).  This Court accordingly rejected the argument that Mr. Thomas should only be held responsible for the marijuana underlying his plea.  *Id.*  After all, "an individual *dealing in sizable amounts of controlled substances* ordinarily would be presumed to recognize that the drug organization with which he deals extends beyond his universe of involvement."  *Id.*

(citing *United States v. Devine*, 934 F.2d 1325 (5th Cir. 1991)). Fair enough, but the same rule has no relevance here. Mr. Johnson's pleaded guilty to dealing roughly 40 grams of crack cocaine, (ROA.37), and the evidence at sentencing established only that he was a street-level dealer selling "gram-level quantities" to individual buyers, *see* (ROA.128). Unlike the defendant in *Thomas*, there is no additional evidence proving long-term participation in other sales at the trap house or elsewhere. The government's reliance on *Thomas* is thus misplaced.

## CONCLUSION

Mr. Johnson respectfully requests this Court to vacate the judgment and remand for resentencing.

Respectfully submitted,

/s/ Taylor Wills Edwards "T.W." Brown
**TAYLOR WILLS EDWARDS "T.W." BROWN**
ASSISTANT FEDERAL PUBLIC DEFENDER
Northern District of Texas
P.O. Box 17743
819 Taylor Street, Room 9A10
Fort Worth, TX 76102
(817) 978-2753
Taylor_W_Brown@fd.org
Texas Bar No. 24087225

## CERTIFICATE OF FILING AND SERVICE

On March 10, 2021, I filed this brief using the Court's electronic filing system. This system sent an electronic notice to opposing counsel at stephen.rancourt@usdoj.gov. I will also send a copy of the brief via first-class mail to Donald Ray Johnson, TDCJ No. 02286796, Texas Department of Criminal Justice – Formby Unit, 998 County Road AA, Plainview, TX 79072. The electronic submission is an exact copy of the corresponding paper document. I have made required privacy redactions. I scanned this document for viruses and found it to be virus free.

/s/ Taylor Wills Edwards "T.W." Brown
TAYLOR WILLS EDWARDS "T.W." BROWN

## CERTIFICATE OF COMPLIANCE

This brief complies with all limitations found in the Federal Rules of Appellate Procedure.  It does not exceed 15 pages in length and contains only 3,283 words.  I prepared this brief in Microsoft Word and used the proportionally spaced typeface Garamond.  The font is a 14-point size throughout.  I understand that a material misrepresentation in completing this certificate may result in the Court striking the brief and imposing sanctions.

/s/ Taylor Wills Edwards "T.W." Brown
TAYLOR WILLS EDWARDS "T.W." BROWN